Catron, Ch. J.
delivered the opinion of the court.
The first objection made on the part of the corpora, tion to this proceeding is, that no power or jurisdiction is vested by our acts of assembly in the county court of Shelby to license a ferry across the Mississippi, because the opposite bank was beyond the jurisdiction of the state. If this objection be good, it applies itself equally to the powers of the legislature, the jurisdiction of which extends only to the middle of the river. The consequence would be, that the government of Tennessee has no powers, save by compact with Arkansas, to cause ferries to be kept up on the Mississippi.
Previous to the adoption of the constitution of the United States, in this and most other respects, the states stood on the foot of independent and distinct nations. In such cases the right of way as to high roads and water-courses exists, because a natural right which the domain of property does not destroy. Vat. B. 2, ch. 9 and 10. That the Mississippi is pre-eminently an open highway, none can doubt; yet upon principles of international law, the right to the use of the water, for purposes of passage and navigation by the citizens of one state within the jurisdiction of another, is classed *390 among imperfect rights. This the constitution of the States has converted into a perfect right, by providing that the citizens of each state shall be entitled to the privileges and immunities of citizens of the several states. The water in its nature being inexhaustible, and the citizens of Tennessee having a perfect right to its use for the above purposes, may enforce the right. The same is true as to the banks of the river, so far as they are necessary for the exercise of the right; they are an easement subject to common use.
A ferry is mainly in respect to the landing, not of the water, (13 Viner’s Ab. 208;) and generally at every ferry, the land on both sides of the stream ought to belong to the owner of the ferry, else he would commit a fres, pass by landing on the soil of another; yet the land of that other may be appropriated by the sovereign power as an easement for the public use, for the purpose of passage and intercourse: and if so appropriated by a sister state, our citizens have the same right of landing on it, as a high-way, that the citizens of the sister state have. Nor is any reason perceived why the courts of this state cannot take notice of the existence of a highway to the bank of the Mississippi, on the Arkansas side. If we could not do so, neither could the territory of Arkansas, and no mode of passage could be adopted. That this ferry is necessary to a considerable, and which promises to be a very important, town, and at a prominent point on the Mississippi, is admitted; as is the propriety of establishing ferries by public authority, subject to public control. But the difficulty is, can Tennessee license a ferry on this bank, and compel the ferry-keeper to transport to Arkansas? That we have no jurisdiction to punish for a refusal to transport from the other side of the river to ours, is true; yet if the right of landing on the other bank is a perfect right, subject to be enforced by the ferry-keeper, and he undertakes to carry, there is no reason why he should not *391 be punished for refusing to transport passengers from the east to the west bank. The same principle is acted upon in cases where the Holston and other large rivers form county lines, and a ferry is granted by the county court on its own bank; and so where the soil over which the road lies on the opposite bank is owned by different persons: there each owner has granted license to transport from his own bank, with liberty to land on the other. Act of 1807, ch. 25.
On looking into the statutes, it is believed the act of 1804, ch. 1, has conferred upon the county courts jurisdiction to license and establish ferries, as ample, most probably, as the legislature possesses power to do. They are declared to have full power and authority to appoint and establish ferries, when necessary, and rate the tolls. We think this ground for dismissing the petition cannot be sustained. It has been carefully examined, because it applies itself to the whole extent of the state bounded by the Mississippi; and were it maintained, would cut off not only the power of the county courts, but the legislature, to settle and license ferries and rate the tolls on that river, however necessary it might be to the purposes of the government, and convenience of the community.
The next question is one of title between the parties to this controversy: Who is entitled to the rights of ferry keepers and of faking tolls, the corporation of Memphis or the petitioners? The latter were the owners in fee of the soil on the east bank; they laid out a town on it, and indicated the landing in controversy on the plan, as a public landing. The town has since been incorporated, and the corporation insists the usufructus is in it, and the naked fee in the petitioners, who hold in trust for the town. To most purposes this is true the streets, the promenade, and this public landing, are all easements for the use of the town, just as the public highway to it is an easement. The petitioners have the *392 same right they would have-had, were there no town there, but a public road to the river; to obstruct the road or ⅛ anywise impair it, the owners of the soil had no right more than others, yet they have the right, claimed in exclusion of others, to be the licensed ferry-keepers. It is an important public trust that some one must perform for the benefit of the community; and if desirable, the owner of the soil subject to the easement, is by law entitled to the preference. The county courts at discretion settle the rates of ferriage, and the presumption is, that just compensation for labor and risk will only be allowed, and no considerable gains arise. It matters little who performs the duty, the corporation or the petitioners; but the latter having the right and claiming its exercise, it was the duty of the county court to adjudge it to them in the manner declared by the circuit-court, the judgment of which we affirm.
Judgment affirmed.